901 P.2d 354 (1995)
79 Wash.App. 164
The STATE of Washington, Respondent,
v.
Darcemon Derondo McJIMPSON, Appellant.
No. 31653-2-I.
Court of Appeals of Washington, Division 1.
September 5, 1995.
*355 Acosta & Nielsen, Seattle, for appellant.
Donald James Raz, Deputy Pros. Atty., Seattle, for respondent.
COX, Judge.
An exchange of angry words in the parking lot of a Seattle minimart swiftly escalated to a fatal shooting. During the encounter, Darcemon McJimpson brandished a handgun at Andre Watts and fired two shots that hit Ezekial Franklin. Franklin died the next day. Because (a) McJimpson's convictions for felony murder and felony assault do not constitute multiple punishment for the same crime, (b) the trial court properly refused to instruct the jury on manslaughter, and (c) we find no merit to McJimpson's other contentions, we affirm.
On the night of March 27, 1992, McJimpson and his companion, "Money," were outside a minimart. Money insulted Watts' sister and her friend. When Watts confronted the two men, McJimpson pulled out a gun and threatened to shoot. Money punched Watts, and McJimpson put the gun away because he thought Watts would fight with Money. Instead, as Watts got back on his feet, he approached McJimpson, and McJimpson pulled the gun out again to scare him. When Watts continued to approach him, McJimpson began shooting. He believed he was aiming "in the air," but a clerk inside the minimart saw him holding the gun at body level and aiming "straight toward" the others who were running. Two bullets hit Ezekial Franklin and ultimately caused his death.
The State charged McJimpson with second degree assault with a deadly weapon of Watts and with the second degree felony murder of Franklin. At trial, McJimpson contended he acted in self-defense by using lawful force. The jury found him guilty as charged. McJimpson appeals.

I. Double Jeopardy
By entering convictions and sentences for both the second degree assault and the second degree felony murder based on the assault, did the trial court impose multiple punishments for the same offense and thus violate the constitutional prohibition against double jeopardy? We hold it did not.
McJimpson did not expressly raise this issue below. However, McJimpson may raise it for the first time on appeal because the issue is one of constitutional magnitude. RAP 2.5(a)(3); State v. Lynn, 67 Wash.App. 339, 345, 835 P.2d 251 (1992).
The double jeopardy clauses of the state and federal constitutions protect a defendant from multiple prosecutions and multiple *356 punishments for the same offense. Whalen v. United States, 445 U.S. 684, 688, 100 S.Ct. 1432, 1435-36, 63 L.Ed.2d 715 (1980); State v. Vladovic, 99 Wash.2d 413, 423, 662 P.2d 853 (1983). However, multiple punishments for the same offense are not unconstitutional when the Legislature intentionally imposes such punishments. Vladovic, 99 Wash.2d at 422, 662 P.2d 853 (relying on Albernaz v. United States, 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275 (1981)). Our role is limited to assuring that the trial court did not exceed the authority which the Legislature granted it. State v. Calle, 125 Wash.2d 769, 776, 888 P.2d 155 (1995).
In determining whether the Legislature intended to authorize multiple punishments for second degree assault and second degree felony murder when the predicate felony is the assault, we first review the statutes proscribing those offenses. See Calle, 125 Wash.2d at 776, 888 P.2d 155. RCW 9A.32.050(1)(b) defines second degree felony murder as follows:
A person is guilty of murder in the second degree when:

. . . . .
(b) He commits or attempts to commit any felony other than those enumerated in RCW 9A.32.030(1)(c) [first degree felony murder], and, in the course of and in furtherance of such crime or in immediate flight therefrom, he, or another participant, causes the death of a person other than one of the participants[.]
A person commits second degree assault by assaulting another with a deadly weapon. RCW 9A.36.021(1)(c). Because neither statute addresses whether the two offenses may be punished cumulatively, we must apply the rules of statutory construction. Calle, 125 Wash.2d at 777, 888 P.2d 155.
Washington has adopted the "same evidence" rule of construction which provides that a defendant is subjected to double jeopardy if he or she is convicted of offenses that are identical both in fact and in law. Calle, 125 Wash.2d at 777, 888 P.2d 155; State v. Roybal, 82 Wash.2d 577, 581-82, 512 P.2d 718 (1973). However,
[i]f there is an element in each offense which is not included in the other, and proof of one offense would not necessarily also prove the other, the offenses are not constitutionally the same and the double jeopardy clause does not prevent convictions for both offenses.
Vladovic, 99 Wash.2d at 423, 662 P.2d 853; see also In re Fletcher, 113 Wash.2d 42, 47, 776 P.2d 114 (1989). As Calle states, our "same evidence" test is comparable to the test set out in Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), which reads:
The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.
The elements of second degree assault with a deadly weapon as applied to these facts are (1) McJimpson assaulted Watts (2) with a deadly weapon. See RCW 9A.36.021(1)(c). The elements of second degree felony murder here are (1) McJimpson committed or attempted to commit the felony of second degree assault against Watts, and (2) in the course of and in furtherance of that crime or in flight therefrom, (3) he caused Franklin's death. See RCW 9A.32.050(1)(b). Both elements of the assault against Watts are contained in the first element of the felony murder of Franklin, and thus proof of the felony murder also necessarily proved the assault. See Vladovic, 99 Wash.2d at 423, 662 P.2d 853. The two crimes therefore are the same in law. The same result would follow from the Blockburger test. 284 U.S. at 304, 52 S.Ct. at 182.
However, the two crimes are not the same in fact even though they arose from the same transaction. See Vladovic, 99 Wash.2d at 423, 662 P.2d 853 (offenses committed during a single transaction are not necessarily the "same offense" for purposes of double jeopardy). Each offense harmed a different victim. Because they are not the same in fact, the two offenses were not the same offense under the "same evidence" test, and McJimpson was not subjected to double jeopardy.
*357 McJimpson's reliance on State v. Johnson, 48 Wash.App. 531, 740 P.2d 337, review denied, 109 Wash.2d 1011 (1987), is misplaced. There, the two defendants were both convicted of two counts of second degree robbery. On appeal they argued that each of their two convictions arose from the same offense and thus violated the prohibition against double jeopardy. 48 Wash.App. at 534, 740 P.2d 337. The State argued that because there were two clerks in the store at the time of the robbery, there were two separate victims and thus two robberies. 48 Wash.App. at 535, 740 P.2d 337. This court disagreed and reversed one of each defendant's convictions.
That situation is significantly different from the present situation where there are two distinct crimes against two distinct victims. See State v. Rupe, 101 Wash.2d 664, 693, 683 P.2d 571 (1984) (by robbing two bank tellers, each of whom was responsible for the money in her till, the defendant committed two separate robberies and his two convictions did not place him in double jeopardy); State v. Larkin, 70 Wash.App. 349, 352-57, 853 P.2d 451 (1993) (relying on Rupe and distinguishing Johnson, this court found no double jeopardy violation when the defendant was convicted of two counts of first degree robbery which arose out of the same conduct; the defendant took different property belonging to two victims, thus those offenses were not identical in fact).
We are aware that the Supreme Court has stated that "[i]t is sufficient to constitute second jeopardy if one [offense] is necessarily included within the other, and in the prosecution for the greater offense, the defendant could have been convicted of the lesser offense." Roybal, 82 Wash.2d at 582, 512 P.2d 718. However, the Roybal court did not have before it the unique situation of the felony murder rule. In State v. Davis, 121 Wash.2d 1, 6, 846 P.2d 527 (1993), the Supreme Court expressly held that "there are no lesser included offenses to second degree felony murder." Thus, Roybal's test of whether two crimes are identical in fact and law does not apply in the felony murder context. McJimpson's convictions do not constitute double jeopardy.

II. Inferior Degree Offense Instruction
McJimpson concedes that second degree manslaughter is not a lesser included offense of second degree felony murder. But he asserts that second degree manslaughter is an inferior degree offense of that crime, and the court erred by refusing to instruct the jury accordingly. We disagree.
In general, the crimes charged in an information are the only crimes of which the defendant may be convicted and on which a jury may be instructed. State v. Foster, 91 Wash.2d 466, 471, 589 P.2d 789 (1979). However, the defendant may be convicted of, and the jury instructed on, a crime that is an inferior degree to the one charged. Foster, 91 Wash.2d at 471, 589 P.2d 789. As RCW 10.61.003 provides,
[u]pon an indictment or information for an offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the indictment or information, and guilty of any degree inferior thereto, or of an attempt to commit the offense.
Thus, a defendant is entitled to an instruction on an inferior degree offense if (1) the statutes for both the charged offense and the proposed inferior degree offense "proscribe but one offense" (Foster, 91 Wash.2d at 472, 589 P.2d 789); (2) the information charges an offense that is divided into degrees, and the proposed offense is an inferior degree of the charged offense (see Foster, 91 Wash.2d at 472, 589 P.2d 789 (citing Salinas v. United States, 277 F.2d 914 (9th Cir. 1960))); and (3) there is evidence that the defendant committed only the inferior offense (State v. Daniels, 56 Wash.App. 646, 651, 784 P.2d 579, review denied, 114 Wash.2d 1015, 791 P.2d 534 (1990)).
Although RCW 9A.32.050(1)(b) (second degree felony murder) and RCW 9A.32.070(1) (second degree manslaughter) both proscribe killing another person, they prohibit significantly different conduct with regard to such killing. A person commits felony murder by killing a person while committing a felony. RCW 9A.32.050(1)(b) (see supra at p. 356). A person commits second degree manslaughter "when, with criminal negligence, he *358 causes the death of another person." RCW 9A.32.070(1). Therefore, the two crimes are separate and distinct from one another. Cf. Foster, 91 Wash.2d at 472, 589 P.2d 789 (because first degree assault and second degree assault proscribe the single offense of assault, the two crimes are not separate and distinct from each other but are simply different degrees of the same crime). Manslaughter cannot be an inferior degree offense of felony murder.
The fact that both crimes are included in RCW 9A.32 does not require a different conclusion. A court may consider a statute's location in the criminal code when determining legislative intent. See State v. Calle, 125 Wash.2d at 780, 888 P.2d 155. But that factor is not necessarily determinative of whether a crime is an inferior degree offense of another crime. McJimpson's own reliance on the assault statutes makes that point: RCW 9A.36 not only proscribes first degree assault and second degree assault (RCW 9A.36.011 and 9A.36.021, respectively), it also proscribes first degree reckless endangerment (RCW 9A.36.045) and promoting a suicide attempt (RCW 9A.36.060). Those latter two offenses are clearly not inferior degrees of assault. See also State v. Campas, 59 Wash.App. 561, 564, 799 P.2d 744 (1990) (Division II rejected the defendant's argument that the classifications of homicide under RCW 9A.32 make first degree manslaughter a lesser degree offense of felony murder), remanded on other grounds, 118 Wash.2d 1014, 823 P.2d 1068 (1992).
Even if second degree manslaughter were an inferior degree offense of second degree felony murder, the evidence in this case does not support McJimpson's contention that he committed only second degree manslaughter. See Daniels, 56 Wash.App. at 651, 784 P.2d 579. The evidence clearly shows he committed the second degree assault against Watts as well as the second degree felony murder. Because McJimpson satisfied none of the three requirements for an inferior degree offense instruction, the trial court did not err by refusing his proposed instruction.

III. Lesser Included Offense Instruction
McJimpson next argues that the trial court erred by refusing to give his proposed instruction stating that the unlawful display of a weapon is a lesser included offense of second degree assault. He maintains that second degree assault with a deadly weapon contains all the elements of the crime of unlawful display of a weapon, and the evidence supports an inference that he committed only that lesser crime. We disagree.
In Washington, a defendant is entitled to an instruction on a lesser included offense if two conditions are satisfied: (1) each of the elements of the lesser offense must be a necessary element of the charged offense, and (2) the evidence in the case must support an inference that the lesser crime was committed. State v. Workman, 90 Wash.2d 443, 447-48, 584 P.2d 382 (1978). As to the second condition, it is not sufficient that the jury might simply disbelieve the State's evidence supporting the charged crime. The evidence must support the inference that the defendant committed only the lesser included offense. State v. Hurchalla, 75 Wash.App. 417, 423, 877 P.2d 1293 (1994), review granted, 125 Wash.2d 1020, 890 P.2d 463 (1995), appeal dismissed, (May 5, 1995).
Here, the State charged McJimpson with second degree assault under RCW 9A.36.021(1)(c), which provides that "[a] person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree: ... [a]ssaults another with a deadly weapon[.]" McJimpson requested an instruction on the crime of unlawful display of a weapon under RCW 9.41.270, which states in part:
(1) It shall be unlawful for any person to carry, exhibit, display, or draw any firearm ... in a manner, under circumstances, and at a time and place that either manifests an intent to intimidate another or that warrants alarm for the safety of other persons.
McJimpson's proposed instruction on the lesser included offense stated only the first means of committing the offense, i.e., displaying a firearm in a manner that "manifests *359 an intent to intimidate another." RCW 9.41.270(1).
In Hurchalla, this court concluded that the holding of State v. Davis, 121 Wash.2d 1, 846 P.2d 527 (1993) required the conclusion that the unlawful display of a firearm is not a lesser included offense of second degree assault. 75 Wash.App. at 421, 877 P.2d 1293. Davis held that because there are alternate means of committing second degree felony murderand thus every element of a proposed lesser offense could not be a necessary element of second degree felony murderthat offense is unamenable to a lesser included offense instruction. Davis, 121 Wash.2d at 6, 7, 846 P.2d 527 (relying on State v. Curran, 116 Wash.2d 174, 804 P.2d 558 (1991)); Hurchalla, 75 Wash.App. at 422, 877 P.2d 1293. Cf. Seattle v. Wilkins, 72 Wash. App. 753, 757 n. 6, 865 P.2d 580 (1994) (commenting that Davis "goes too far"). Thus, under Hurchalla, McJimpson cannot satisfy Workman`s first condition, and his argument fails.
He also cannot satisfy Workman`s second condition because the evidence does not permit the inference that McJimpson committed only the offense of unlawfully displaying a weapon under RCW 9.41.270(1). See Hurchalla, 75 Wash.App. at 423, 877 P.2d 1293. McJimpson admitted at trial that he pointed the gun at Watts to scare him. There is no dispute that McJimpson's gun was loaded. "That evidence supports an inference that an assault was committed because it is intentional conduct that would place a reasonable person in apprehension of harm." State v. Karp, 69 Wash.App. 369, 376, 848 P.2d 1304, review denied, 122 Wash.2d 1005, 859 P.2d 602 (1993); see also State v. Johnson, 29 Wash.App. 807, 816, 631 P.2d 413, review denied, 96 Wash.2d 1009 (1981) (one commits second degree assault by pointing a loaded gun at another person within shooting distance).
Contrary to McJimpson's argument, it is not necessary that Watts actually felt "apprehension of harm." See State v. Byrd, 125 Wash.2d 707, 713, 887 P.2d 396 (1995) (to prove assault by putting another in apprehension of harm, the State must prove the defendant acted with an intent to create in the victim's mind a reasonable apprehension of harm or to cause bodily harm). Even if it were, however, the evidence shows that Watts experienced some degree of fear. He testified that he did not know if he was scared, but he felt "paralyzed" when McJimpson started shooting. Nekkra Robles also testified that Watts "seemed scared the whole time the gun was out."
Finally, McJimpson's self-defense theory required the jury either to convict him as charged or acquit him of both crimes. See Hurchalla, 75 Wash.App. at 423, 877 P.2d 1293. That complete defense negated the required inference that McJimpson committed only a lesser included offense. 75 Wash. App. at 424, 877 P.2d 1293. The trial court properly refused to give McJimpson's proposed instruction.

IV. MergerMultiple Punishments
McJimpson argues that because the assault on Watts was an element of the second degree felony murder of Franklin the two crimes merged, and under the merger doctrine he could not be convicted of both crimes. In this context, merger is "a doctrine of statutory interpretation used to determine whether the Legislature intended to impose multiple punishments for a single act which violates several statutory provisions." State v. Vladovic, 99 Wash.2d at 419 n. 2, 662 P.2d 853. The doctrine
only applies where the Legislature has clearly indicated that in order to prove a particular degree of crime (e.g., first degree rape) the State must prove not only that a defendant committed that crime (e.g., rape) but that the crime was accompanied by an act which is defined as a crime elsewhere in the criminal statutes (e.g., assault or kidnapping).
Vladovic, 99 Wash.2d at 420-21, 662 P.2d 853.
However, if the offenses that the defendant committed have independent purposes or effects, they may be punished separately. Vladovic, 99 Wash.2d at 421, 662 P.2d 853; State v. Johnson, 92 Wash.2d 671, 680, 600 P.2d 1249 (1979), cert. dismissed, 446 U.S. 948, 100 S.Ct. 2179, 64 L.Ed.2d 819 (1980). *360 In a case involving first degree rape, kidnapping, and assault, Johnson held that when the State must prove one crime because it is a necessary element of a different charged crime,
as to any such offense which is proven, an additional conviction cannot be allowed to stand unless it involves some injury to the person or property of the victim or others, which is separate and distinct from and not merely incidental to the crime of which it forms an element.
Johnson, 92 Wash.2d at 680, 600 P.2d 1249.
In State v. Fagundes, 26 Wash.App. 477, 614 P.2d 198, 625 P.2d 179, review denied, 94 Wash.2d 1014 (1980), the defendant was convicted of crimes including first degree felony murder, first degree rape, and first degree kidnapping. Relying on Johnson, this court held that the proof of the first degree rape and kidnapping provided essential elements of the first degree felony murder under RCW 9A.32.030(1)(c), and thus the rape and kidnapping merged into the murder. Fagundes, 26 Wash.App. at 485, 486, 614 P.2d 198. The court therefore set aside the convictions and sentences for the rape and kidnapping charges. 26 Wash.App. at 486, 614 P.2d 198.
However, in State v. Peyton, 29 Wash.App. 701, 719-20, 630 P.2d 1362, review denied, 96 Wash.2d 1024 (1981), Division II declined to follow Fagundes because the bank robbery in Peyton "was a separate and distinct offense from the felony-murder of which it form[ed] an element." Peyton, 29 Wash.App. at 720, 630 P.2d 1362. The court distinguished the assault and kidnapping offenses in Fagundes which were "`intertwined'" with the first degree rape. Peyton, 29 Wash.App. at 720, 630 P.2d 1362 (quoting Johnson, 92 Wash.2d at 681, 600 P.2d 1249).
Here, the assault on Watts did not "merge" with the felony murder of Franklin. There were two victims here, and "`[c]rimes against different victims clearly seem to satisfy Johnson's `independent purpose or effect' test.'" State v. Clapp, 67 Wash.App. 263, 275, 834 P.2d 1101 (1992), review denied, 121 Wash.2d 1020, 854 P.2d 42 (1993) (quoting State v. Hudlow, 36 Wash.App. 630, 633, 676 P.2d 553 (1984)). Further, in contrast to the crimes of assault and kidnapping in Johnson, which the Supreme Court considered to be for the sole purpose of compelling the victims' submission to the rapes (92 Wash.2d at 681, 600 P.2d 1249). McJimpson did not use his assault on Watts for the purpose of murdering Franklin. The "additional conviction" of assault may stand because it involved injury to Watts, which is "separate and distinct from and not merely incidental to the crime of which it forms an element," i.e., the felony murder. See Johnson, 92 Wash.2d at 680, 600 P.2d 1249.

V. MergerProsecutor's Charging Discretion
Finally, McJimpson contends that his second degree assault merged into the second degree felony murder so that the prosecutor was precluded from even charging him with felony murder. He contends the felony murder rule gives the prosecutor too much charging discretion, violates the purposes of the Sentencing Reform Act of 1981 (SRA), RCW 9.94A, and amounts to cruel and unusual punishment.
Because, as McJimpson acknowledges, our Supreme Court has repeatedly refused to adopt the merger doctrine in this context, his argument fails. See State v. Crane, 116 Wash.2d 315, 333, 804 P.2d 10 (the court unequivocally held that it would not abandon the felony-murder rule when an assault is the predicate felony), cert. denied, 501 U.S. 1237, 111 S.Ct. 2867, 115 L.Ed.2d 1033 (1991); State v. Wanrow, 91 Wash.2d 301, 312, 588 P.2d 1320 (1978) (there is no constitutional defect in permitting the prosecutor to charge crimes that have different elements, such as second degree felony murder and the underlying felony of first degree assault); State v. Goodrich, 72 Wash. App. 71, 78-79, 863 P.2d 599 (1993) (noting that while Crane did not consider the SRA changes, they had already occurred when the court reached its holding), review denied, 123 Wash.2d 1029, 877 P.2d 695 (1994). This court has also rejected the same argument McJimpson makes concerning Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). See Goodrich, 72 *361 Wash.App. at 79, 863 P.2d 599; State v. Heggins, 55 Wash.App. 591, 601 n. 6, 779 P.2d 285 (1989).
We affirm the judgment and sentence.
WEBSTER and ELLINGTON, JJ., concur.